[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

Nos. 95-6637, 95-6875

————————————————

RICKY WYATT, by and through his Aunt and Legal Guardian, Mrs. W. C. Rawlins, Jr.; GLENDA BRANDNER, by and through her husband and legal guardian, Wolfgang Brandner; DAVID S. SCHOEL, by and through his father and legal guardian, J. Fred Schoel, Dr.; D. A. R. Peyman, Jr., for himself and all others similarly situated; JOSEPH L. MOUDRY, for himself and all others similarly situated; et al.,

Plaintiffs-Appellees,

DIANE MARTIN; MARY BETH PARKER; WILLIAM SMITH; ADELIA KEEBLER; MICHAEL GUINS, et al.

Plaintiffs-Intervenors-Appellees,

versus

CHARLES FETNER, as Commissioner of Mental Health and the State of Alabama Mental Health Officer; JAMES F. REDDOCH, JR., Director, Bryce Hospital; JOHN T. BARTLETT, Searcy Hospital; KAY V. GREENWOOD, North Alabama Regional Hospital; DR. LARRY L. LATHAM, Greil Memorial Psychiatric Hospital; et al.,

Defendants-Appellants,

UNITED STATES OF AMERICA,

Amicus.

————————————————

Appeals from the United States District Court
for the Middle District of Alabama

————————————————

**(August 8, 1996)**

Before TJOFLAT, Chief Judge, RONEY and CAMPBELL*, Senior Circuit Judges.

*Honorable Levin H. Campbell, Senior U.S. Circuit Judge for the First Circuit, sitting by designation.

TJOFLAT, Chief Judge:

## I.

This case began on October 23, 1970, when patients at Bryce Hospital, a state-run institution for the mentally ill in Tuscaloosa, Alabama, filed suit in the United States District Court for the Middle District of Alabama against the commissioner and deputy commissioner of the Alabama Department of Mental Health and Mental Retardation ("DMH/MR"), the members of the Alabama Mental Health Board, the governor of Alabama, and Alabama's probate judges.[1] These patients alleged that the conditions at Bryce Hospital were such that they had been deprived of their rights under the United States Constitution.[2]

---

[1] Since the beginning of the litigation, the parties and the courts have treated this case as a class action, even though the district court has failed to certify a plaintiff class. See, e.g., Wyatt v. Stickney, 325 F. Supp. 781, 782 (M.D. Ala. 1971) ("This is a class action . . . . The plaintiffs sue on behalf of themselves and on behalf of other members of their respective classes."); Wyatt v. Aderholt, 503 F.2d 1305, 1306 (5th Cir. 1974) ("The guardians of patients . . . brought this class action on behalf of their wards and other civilly committed patients."). One of the issues on appeal is the propriety of the district court's "recertification" of a plaintiff class. See infra part IV.

[2] The lawsuit was filed after staff members at Bryce Hospital and other DMH/MR institutions were discharged as a result of a state "budgetary crisis." These discharged staff members joined the Bryce Hospital patients as party plaintiffs and sought reinstatement to their positions. Both groups of plaintiffs sought to

> redress the deprivation, under color of laws and statutes of the State of Alabama, of rights, privileges, and immunities secured by the Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, providing for equal rights of all persons within the jurisdiction of the United States.

On March 12, 1971, following a hearing on the plaintiffs'

_____

The patients alleged that the staff reductions would have two harmful consequences. First, patients involuntarily committed to Bryce Hospital would not receive the care that Alabama law required that they receive. Such lack of care, it was alleged, would deprive the patients of "due process" because the patients would be subjected to what amounted to penal confinement. Second, the staff reductions and consequent lack of adequate treatment programs would have "serious and irreparable consequences" for the patients at Bryce Hospital. The patients asked the district court to enter a permanent injunction ordering the defendants to "insure and direct that no present course of mental health treatment and service now being given to plaintiffs . . . shall in any way be interrupted, changed, or interfered with." The patients also sought an injunction that would end further involuntary commitment of patients to Bryce Hospital.

The discharged staff members alleged that they had a right under Alabama law to remain in their jobs, that their discharge violated their due process right to pre-termination hearings, and that the defendants had other means of meeting the budgetary crisis aside from cutting staff. They sought an injunction that would require the defendants to "rescind" all staff terminations at Bryce Hospital. These staff members subsequently abandoned their claims and withdrew from the case, leaving the patients as the only plaintiffs. See Wyatt, 325 F. Supp. at 782 n.1.

In 1974, the former Fifth Circuit described the patients' complaint and the subsequent amendment to that pleading as follows:

> The original complaint did not allege that treatment levels at Bryce had been inadequate before the [staff] terminations. For reasons not entirely clear from the record before us, however, the focus of the litigation soon shifted from the effects of the [staff] terminations to questions of the overall adequacy of the treatment afforded at the Alabama state mental hospitals. On January 4, 1971, the plaintiffs amended the complaint to add prayers that the defendants be enjoined from operating Bryce "in a manner that does not conform to constitutional standards of delivering adequate mental treatment to its patients"; that the [c]ourt order defendants to prepare a "comprehensive constitutionally acceptable plan to provide adequate treatment in any state mental health facility"; and that the court declare that patients confined to a state mental health facility are entitled to "adequate, competent treatment."

Wyatt v. Aderholt, 503 F.2d 1305, 1308 (5th Cir. 1974).

3

application for preliminary injunctive relief, the district court found that patients at Bryce Hospital were being denied their "constitutional right to receive such individual treatment as will give each of them a realistic opportunity to be cured or to improve his or her mental condition."[3] Wyatt v. Stickney, 325 F. Supp. 781, 784 (M.D. Ala. 1971). The court ordered the defendants to devise, and to submit to the court for approval, a plan to bring the hospital into compliance with constitutional standards of care.

Several months after the district court's decision, the plaintiffs were given leave to amend their complaint to include allegations of constitutionally inadequate treatment at a second state-run hospital for the mentally ill, Searcy Hospital, in Mt. Vernon, Alabama, and at Partlow State School and Hospital, a state-run institution for mentally retarded persons in Partlow, Alabama.[4] Following this amendment, the court's order of March

---

[3] The district court did not explicitly state what constitutional provision formed the basis for its ruling. The court found that "[t]o deprive any citizen of his or her liberty upon the altruistic theory that the confinement is for humane therapeutic reasons and then fail to provide adequate treatment violates the very fundamentals of due process." Wyatt, 325 F. Supp. at 785.

[4] As noted in the text, supra, when this suit was brought, the plaintiffs were patients at Bryce Hospital, not Searcy Hospital or Partlow State School and Hospital. Some of the patients were subsequently transferred to Searcy and Partlow (or were eligible for such transfer) and thus had standing to complain of the conditions at those institutions. The amended complaint alleged that the three institutions were being operated in a "[c]onstitutionally impermissible manner which results in scientifically and medically inadequate care," but did not cite any specific provision of the Constitution.

4

12, 1971, was made applicable to the Searcy and Partlow facilities.

After the defendants failed to formulate "minimum medical and constitutional standards" for the operation of the three institutions, the district court, on April 13, 1972, established what would become known as the "Wyatt standards," which set forth several specific requirements for the adequate treatment of both mentally ill and mentally retarded individuals.[5]  The court enjoined the defendants to implement the standards.  See Wyatt v. Stickney, 344 F. Supp. 373, 378-86 (M.D. Ala. 1972) (Bryce and Searcy Hospitals); Wyatt v. Stickney, 344 F. Supp. 387, 394-407 (M.D. Ala. 1972) (Partlow State School and Hospital).[6]  The former Fifth Circuit affirmed the district court's injunctions in 1974.  Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir. 1974).  It upheld under the Due Process Clause of the Fourteenth Amendment the plaintiffs' constitutional right to treatment and affirmed the standards that were promulgated by the district court.  In

---

[5]  The Wyatt standards were designed to meet what the district court called the three "fundamental conditions for adequate and effective treatment": "(1) a humane psychological and physical environment, (2) qualified staff in numbers sufficient to administer adequate treatment and (3) individualized treatment plans."  See Wyatt v. Stickney, 334 F. Supp. 1341, 1343 (M.D. Ala. 1971).

[6]  In the order pertaining to Bryce and Searcy Hospitals, the court reiterated its earlier holding that civilly committed mentally ill persons have a constitutional right to treatment. In the order pertaining to Partlow State School, the court outlined a "constitutional right to habilitation" for civilly committed mentally retarded individuals so as to "give each of [these persons] a realistic opportunity to lead a more useful and meaningful life and to return to society."  Wyatt, 344 F. Supp. at 390.

5

1975, the district court, with the agreement of the parties, amended its 1972 injunctions to apply the Wyatt standards to all DMH/MR facilities.[7]

The defendants failed to comply with the Wyatt standards, and in 1979, the governor of Alabama moved the district court to place Alabama's mental health and mental retardation system into receivership. See Wyatt v. Ireland, Civ. A. No. 3195-N (M.D. Ala. Oct. 25, 1979). On January 15, 1980, the court appointed the governor receiver of all DMH/MR institutions.

On March 9, 1981, the plaintiffs moved the court to force the defendants to comply with the 1972 injunctive orders by ordering them to provide "sufficient funds" to the DMH/MR so that it could satisfy the Wyatt standards. The plaintiffs did not seek enforcement of the court's injunctive orders by using equity's time-honored procedures for obtaining the enforcement of an injunction. Rather, as they have done throughout this case,

_____

[7] The 1975 order changed the definitions of "institution" and "hospital" in the Wyatt standards to include "any other centers, homes, and facilities -- public or private -- to which [mentally ill, emotionally disturbed, or mentally retarded] persons are assigned or transferred for residence" by the DMH/MR. The definition of "residents" in the standards applicable to facilities for the mentally retarded was changed to include "all persons who are now confined and all persons who may be confined at . . . any other institution as hereinabove defined for the care, treatment, and habilitation of the mentally retarded." In the standards applicable to facilities for the mentally ill, the definition of "patients" was changed to include "all persons who are now confined and all persons who may in the future be confined at . . . any other 'hospital' as hereinabove defined for the care, custody, and treatment of the mentally ill or emotionally disturbed." See Wyatt v. Hardin, Civ. A. No. 3195-N (M.D. Ala. Feb. 28, 1975). Although the court's injunctions now reached private facilities in which DMH/MR placed patients, no private facility was made a defendant in the action.

they simply asked the court to "do something" to make the defendants comply with the Wyatt standards.[8]  On May 18, 1981,

---

[8]  Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance.  See Newman v. State of Alabama, 683 F.2d 1312, 1318 (11th Cir. 1982), cert. denied, 460 U.S. 1083, 103 S. Ct. 1773, 76L. Ed. 2d 346 (1983).  In his motion, the plaintiff cites the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned.  If the court is satisfied that the plaintiff has made out a case for an order to show cause, it issues the order to show cause.  The defendant, following receipt of the order, usually files a response, either confessing his noncompliance or presenting an excuse, or "cause," therefor.  The dispute is thereafter resolved at a show cause hearing, with the issues to be decided at the hearing framed by the show cause order and the defendant's response.

At the hearing, if the plaintiff establishes the defendant's noncompliance with the court's injunctive order and the defendant presents no lawful excuse for his noncompliance, the court usually adjudges the defendant in civil contempt and imposes a sanction that is likely to prompt the defendant's compliance with the injunction.

> One sanction might be to incarcerate . . . the defendant[ ] . . . .  While a federal court is always reluctant to coerce compliance with its decrees by incarcerating a state official, if that official is in contempt there can be no doubt of the court's authority to do so.  State officials are not above the law.
>
> Another sanction might be to fine the recalcitrant official.  "Civil contempt may . . . be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance . . . .  If [a state official] refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance."  [Hutto v. Finney, 437 U.S. 678, 691, 98 S. Ct. 2565, 2573, 57 L. Ed. 2d 522 (1978).]

Newman, 683 F.2d at 1318 (citation omitted).

In seeking to enforce the court's injunctions in this case, the plaintiffs have not resorted to the traditional means of

7

the defendants, in response to the plaintiffs' motion, moved the court to modify its 1972 injunctive orders to eliminate the Wyatt standards and to substitute accreditation by the Joint Commission on Accreditation of Healthcare Organizations ("JCAHO") as the standard of constitutionally acceptable care at DMH/MR institutions. The plaintiffs opposed the substitution. In 1983, the court held a hearing on both the defendants' and plaintiffs' 1981 motions, but did not rule on them.

The parties eventually negotiated a settlement, and submitted it in the form of a consent decree, which the district court approved on September 22, 1986. See Wyatt v. Wallis, Civ. A. No. 3195-N (M.D. Ala. Sept. 22, 1986). Among other things, the decree (1) removed the Alabama mental health and mental retardation system from receivership; (2) dismissed from the case all defendants except the commissioner of mental health and mental retardation and the individual directors of the DMH/MR institutions; (3) continued in effect the Wyatt standards; (4) enjoined the defendants to "continue to make substantial progress in achieving compliance with" the Wyatt standards; and (5)

enforcing injunctions described above. Nor has the court issued orders to show cause, calling upon the allegedly recalcitrant defendants to explain why they have not complied with the injunctive provisions in question. Consequently, the hearings that the district court has convened to consider the plaintiffs' motions for enforcement have amounted for the most part to status conferences in which the court is briefed, sometimes through testimony, on the current conditions at DMH/MR institutions. This may account for the court's failure to rule on the plaintiffs' 1981 motion to ensure compliance with the court's 1972 injunctive orders and, as well, the plaintiffs' 1993 motion, described in the text, infra, to enforce the consent decree entered in 1986.

8

enjoined the defendants to seek and maintain JCAHO accreditation at all DMH/MR institutions.

On December 20, 1990, patients at the Thomasville Adult Adjustment Center in Thomasville, Alabama, moved the district court for leave to intervene in the litigation as plaintiffs.[9] In their proposed complaint, the intervenors alleged that the defendants had violated the Wyatt standards and that certain unconstitutional conditions existed at Thomasville.[10] The intervenors sought a permanent injunction barring further admissions to the Center until the defendants complied with the Wyatt standards at that institution. The court granted the Thomasville patients' motion to intervene on January 25, 1991, and, in October of that year, held a bench trial on their claims. The district court has yet to rule on this matter.[11]

---

[9] Patients at Thomasville were already members of the plaintiff "class," as defined by the Wyatt standards. See Wyatt, Civ. A. No. 3195-N (M.D. Ala. Feb. 28, 1975), (changing the definition of "hospital" in the Wyatt standards specifically to include the Thomasville Adult Adjustment Center).

[10] Among other things, the intervenors claimed that "Alabama's indeterminate involuntary civil confinement of the mentally ill violate[d] the Due Process Clause of the Fourteenth Amendment" because the state did not limit the length of the confinement and the DMH/MR failed to provide for periodic adversarial post-commitment reviews of such confinement. See Wyatt v. King, 773 F. Supp. 1508, 1511 (M.D. Ala. 1991). On July 22, 1991, the district court granted the intervenors relief on this claim, declaring Alabama's "indeterminate involuntary civil commitment of the mentally ill" unconstitutional and ordering periodic adversarial post-commitment reviews. Id. at 1517-18.

[11] The defendants have petitioned this court for a writ of mandamus compelling the district court to rule on the intervenors' claim of unconstitutional conditions at Thomasville. See In re Fetner, No. 95-6879 (11th Cir. filed Oct. 23, 1995). This court stayed the petition pending the resolution of the

9

II.

On January 18, 1991, before the district court ruled on the Thomasville patients' motion to intervene, the defendants, acknowledging that they were not in compliance with all of the Wyatt standards at DMH/MR institutions, nonetheless moved the district court to terminate the 1986 consent decree and to dismiss the case. On April 19, 1991, the defendants, apparently as an alternative measure, moved the court to modify the consent decree by deleting or modifying several of the Wyatt standards. Early in 1993, while these motions were still pending, the plaintiffs moved the district court for "a finding that the defendants are violating the 1986 Consent Decree" and for "contempt sanctions for defendants' violations."[12] The court

---

instant appeals.

[12] Unlike their previous motion to enforce the district court's injunctive orders, see supra note 8, on this occasion plaintiffs' motion alleged that the defendants were violating the 1986 consent decree and sought a contempt adjudication and sanctions. Like the previous motion, however, the motion failed to allege, with specificity sufficient to inform the defendants, which injunctive provisions the defendants were purportedly violating.

On the same day that they filed the above motion, the plaintiffs moved the court for leave to amend their complaint to assert a claim for declaratory and injunctive relief on the ground that the defendants were violating provisions of the newly enacted Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 328. In effect, the plaintiffs sought leave to bring an entirely new lawsuit. The claims under the Americans with Disabilities Act were unrelated to the case at hand, but the district court granted the motion to amend.

10

ordered that the defendants' and the plaintiffs' motions be heard together at an evidentiary hearing.[13]

The hearing was held from March 13 to May 16, 1995. On the first day of the hearing, the court announced at a meeting in chambers that, in response to deposition testimony describing unsafe living conditions at the Eufala Adolescent Center in Eufala, Alabama, it was considering entering preliminary injunctive relief on behalf of the patients at Eufala. On April 17, the plaintiffs formally moved the court to provide such relief, and on July 11, the court entered a preliminary injunction enjoining the defendants from "failing to take immediate and affirmative steps to provide for the safety and protection from abuse of all resident children at the Eufala Adolescent Center, as required by [the Wyatt standards]." Wyatt v. Poundstone, 892 F. Supp. 1410, 1423 (M.D. Ala. 1995). The court further ordered the defendants to submit a plan to the court to "address and resolve immediately the severe and pervasive safety problems and abuse of resident children at Eufala Adolescent Center." Id. at 1423-24. The defendants appeal the preliminary injunction in No. 95-6637, contending that the district court abused its discretion in ordering the relief

---

[13]   With respect to the plaintiffs' motion that the defendants be held in contempt for violating the 1986 consent decree, the court did not determine whether the motion was sufficient to warrant the issuance of an order to show cause, see supra note 8; rather, the court simply scheduled an evidentiary hearing.

11

it granted.  After the appeal was taken, the district court, on September 15, 1995, approved a one-year remedial plan for Eufala.

The Eufala Adolescent Center is now closed; there are no patients residing at the facility.  Further, it appears that the state is not likely to reopen Eufala prior to September 15, 1996, the date on which the defendants' plan (and thus the preliminary injunction) expires.  The appeal is therefore moot.[14]

III.

On August 17, 1995, a month after the entry of the preliminary injunction, the defendants moved the district judge to disqualify himself from the case, alleging (1) that the judge has acted in a manner "in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a); and (2) that "in private practice he served as lawyer in the matter in controversy," 28

---

[14]  On August 1, 1995, the defendants asked the district court to stay the preliminary injunction pending this appeal; the district court denied their request a week later.  After the DMH/MR announced that it was closing Eufala, the district court stayed the preliminary injunction because it found "the need for the preliminary injunction . . . is moot."  Wyatt v. Fetner, Civ. A. No. 3195-N (M.D. Ala. Mar. 22, 1996).  (The district court also informed this court that upon remand of this appeal it will dissolve the preliminary injunction.)  The defendants have appealed the stay order, Wyatt v. Fetner, No. 96-6279 (11th Cir. filed Mar. 22, 1996); we dismiss this appeal as moot in a separate unpublished opinion.

U.S.C. § 455(b)(2).[15]  On October 3, 1995, the judge denied the motion.  The defendants appeal this denial in No. 95-6875.

An interlocutory appeal does not lie from the denial of a motion to disqualify a district judge.  See <u>United States v. Gregory</u>, 656 F.2d 1132, 1136 (5th Cir. Unit B Sept. 1981); <u>In re Corrugated Container Antitrust Litig.</u>, 614 F.2d 958, 960-61 (5th Cir.), <u>cert. denied</u>, 449 U.S. 888, 101 S. Ct. 244, 66 L. Ed. 2d 114 (1980).[16]  The defendants contend, however, that an order denying a motion to disqualify is appealable if it is pendent to a final or otherwise appealable order.  See <u>Stewart v. Baldwin County Bd. of Educ.</u>, 908 F.2d 1499, 1509 (11th Cir. 1990) ("Pendent jurisdiction is properly exercised over nonappealable decisions of the district court when the reviewing court already

_____

[15]  Section 455 provides:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it.

28 U.S.C. § 455(a), (b)(1)-(2).

[16]  In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

13

has jurisdiction over one issue in the case."); see also Swint v. Chambers County Comm'n, ___ U.S. ___, ___ & n.2, 115 S. Ct. 1203, 1209 & n.2, 131 L. Ed. 2d 60 (1995) (discussing the doctrine of "pendent appellate jurisdiction").  Here, the defendants claim that the district court's denial of the motion to disqualify is pendent to and appealable with its order granting the plaintiffs preliminary injunctive relief at Eufala, which the defendants appeal in No. 95-6637.

The appeal of the preliminary injunction is moot.  See supra part II.  Thus, even were the unappealable disqualification order pendent to the appealable preliminary injunction, the denial of the motion to disqualify is no longer pendent to any reviewable order.  The court's order would be reviewable on a petition for a writ of mandamus.  See Corrugated Container, 614 F.2d at 961 n.4. Defendants have not submitted such a petition, however, and we decline on our own initiative to treat their appeal of the court's order as a mandamus petition.[17]  We therefore have no jurisdiction to review the disrict court's order denying the defendants' motion to disqualify.

IV.

_____

[17]  The defendants have petitioned for a writ of mandamus to disqualify the district judge from the case of Lynch v. Evans, Civ. A. No. 74-T-89-N (M.D. Ala.), another longstanding case concerning Alabama's mental health system.  The petition, In re Fetner, No. 95-6728 (11th Cir. filed Sept. 5, 1995), was consolidated with these appeals for oral argument.  We dismiss the petition as moot in a separate unpublished opinion.

14

On December 22, 1994, the defendants moved the district court to "recertify" or modify the plaintiff class, or, in the alternative, to "decertify" the class, because a plaintiff class had never been certified in the case.[18]  On October 3, 1995, the same day the court denied the defendants' motion to disqualify the district judge, the court denied the motion to decertify the plaintiff class.  At the same time, the court "recertified" the plaintiff class.[19]  See Wyatt v. Poundstone, Civ. A. No. 3195-N (M.D. Ala. Oct. 3, 1995).  In No. 95-6875, the defendants appeal the district court's refusal to decertify the plaintiff class and its recertification of that class.

Class recertification orders are not final orders within the meaning of 28 U.S.C. § 1291; as such, they are ordinarily not appealable.  See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468-69, 98 S. Ct. 2454, 2458, 57 L. Ed. 2d 351 (1978); Elster v. Alexander, 608 F.2d 196, 197 (5th Cir. 1979); Knox v. Amalgamated Meat Cutters & Butchers Workmen, 520 F.2d 1205, 1206 (5th Cir. 1975).  Likewise, 28 U.S.C. § 1292(a) does not provide for interlocutory appellate review of such orders.  The defendants

---

[18]  See supra note 1.  The defendants also contended that the plaintiff class should be decertified because the named plaintiffs' claims had become moot.  The district court, however, allowed a new group of plaintiffs whose claims are not moot (the Hanna class) to "intervene" in the case, essentially substituting them for the Wyatt plaintiffs.

[19]  The plaintiff class is now defined as "mentally-ill and mentally-retarded individuals who live in hospitals, centers, facilities, or homes, public or private, to which the individual has been assigned or transferred to by the [DMH/MR]."  Wyatt v. Poundstone, Civ. A. No. 3195-N (M.D. Ala. Oct. 3, 1995).

contend that the recertification order, like the court's denial of the motion to disqualify, is appealable because it is pendent to the appealable order granting preliminary injunctive relief. As we have explained, see supra part III, because the preliminary injunction is moot, the recertification order is no longer pendent to any reviewable order. We therefore have no jurisdiction to review the district court's order refusing to decertify the plaintiff class and recertifying that class.

V.

In conclusion, the appeal of the preliminary injunction entered on July 11, 1995, is DISMISSED as moot (No. 95-6637), and the appeal of the district court's orders of October 3, 1995, is DISMISSED for lack of appellate jurisdiction (No. 95-6875). All outstanding motions before this court pertaining to these appeals are hereby DENIED as moot.

SO ORDERED.