Johnny REYNOLDS, et al., Plaintiffs,

v.

ALABAMA DEPARTMENT OF TRANSPORTATION, et al., Defendants.

No. CIV. A. 85–T–665–N.

United States District Court, M.D. Alabama, Northern Division.

June 11, 1998.

Robert L. Wiggins, Jr., Ann K. Wiggins, Russell W. Adams, Abigail P. van Alstyne, Kimberly C. Page, Scott Gilliland, and Kell A. Simon, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Johnny Reynolds, plaintiff, and Cecil Parker, Frank Reed, Ouida Maxwell, Martha Ann Boleware, Florence Belser, Peggy Vonsherie Allen, and Jeffrey W. Brown, intervenor-plaintiffs.

Claudia H. Pearson, Nakamura & Quinn, Birmingham, AL, for Robert Johnson, intervenor-plaintiff.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, Tim Williams, intervenors.

Raymond P. Fitzpatrick, Jr., R. Scott Clark, J. Michael Cooper, Fitzpatrick, Cooper & Clark, Birmingham, AL, for Michael Grant, John D'Arville, and Andrew McCullough, intervenors.

Thomas R. Elliott, Jr., Allen R. Trippeer, Jr., Lisa W. Borden, C. Dennis Hughes, London & Yancey, Birmingham, AL, and William H. Pryor, Jr., Attorney General for the State of Alabama, Montgomery, AL, for Alabama Department of Transportation, Alabama State Personnel Department, Jimmy Butts, in his official capacity as Director for the Alabama Department of Transportation, Halycon Vance Ballard, in her official capacity as Director of the Alabama State Personnel Department, and Fob James, in his official capacity as Governor of the State of Alabama, defendants.

William P. Gray, Jr., Gray & Jauregui, Montgomery, AL, for Fob James, in his official capacity as Governor of the State of Alabama, defendant.

Elaine R. Jones, Norman J. Chachkin, NAACP Legal Defense Fund, New York, NY, for NAACP Legal Defense and Educational Fund, Inc., amicus.

**1316**

Barbara R. Arnwine, Thomas J. Henderson, Richard T. Seymour, Teresa A. Ferrante, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for The Lawyers' Committee for Civil Rights under Law, amicus.

## ORDER AND INJUNCTION
MYRON H. THOMPSON, District Judge.

### I.

In an order and injunction entered April 13, 1998 (Doc. no. 2574), the court wrote that, "In open court on April 1, 1996, the court entered an oral order requiring that defendant Alabama Department of Transportation show cause as to why further relief should not be ordered to eliminate racial harassment and the use of racial slurs in the department." *Reynolds v. Alabama Dep't of Transp.*, 4 F.Supp.2d 1068, 1090–91 (M.D.Ala.1998). "Having now heard all the evidence," the court then continued, "the solution to the problem is not a reworking or expansion of the department's racial harassment policy, which was adopted pursuant to a court directive in 1992, and which is now incorporated in article XVII in consent decree I," but rather "The problem is ... that there has been a complete, or almost complete, failure of enforcement," a problem which "should be addressed through civil and criminal contempt proceedings. *Newman v. Alabama*, 683 F.2d 1312 (1982); *Wyatt v. Rogers*, 92 F.3d 1074, 1078 n. 8 (11th Cir. 1996)." *Id.* The court recognized that, because there had been some period of time since it had heard the evidence upon which it relied, it had no current knowledge about conditions in the Transportation Department, and thus the court left it up to the plaintiffs to explore the matter further if they desired. The court stated that, "If, after updating themselves on the racial conditions within the department, the plaintiffs believe that the department is still failing to enforce the racial harassment policy adequately, the plaintiffs may file a motion for civil and criminal contempt against those who have violated the racial harassment policy." *Id.*

The court nevertheless concluded that "certain additional, but minimal, procedural measures are appropriate to help assure compliance in the future with the depart-

ment's racial harassment policy." *Id.* As stated, the evidence reflected "that there has been a complete, or almost complete, failure of enforcement" of the department's harassment policy, and the court believed that this failure was due, in part, to lack of adequate dissemination of the policy and to lack of knowledge among the rank and file that the department had a zero tolerance for racial harassment. Thus, the court wanted to make sure that, should the plaintiffs decide to pursue contempt proceedings, no one in the Transportation Department could claim that he or she was unaware of the policy and, in particular, of the zero tolerance for racial harassment in the department.

The court therefore required that the Transportation Department obtain from its employees, and in particular, its supervisors, an affidavit confirming that they had received the department's harassment policy and understood that they were under a court order to enforce it (with attendant civil and criminal compliance sanctions for non-compliance). *Id.* at 1091.

### II.

The court, however, agrees with the Adams intervenors that the Transportation Department employees should also have been informed that the April 13 order and injunction was not intended to waive or deny any due-process rights that employees have with regard to potential civil and criminal contempt proceedings and, more specifically, employees do not waive any such rights by executing any affidavits or other documents required for compliance with the order. Such notice must be included.

The court further agrees with the Transportation Department that the April 13 order and injunction was not intended to add anything substantive to the department's already existing racial harassment policy. Indeed, the centerpiece of the April 13 order and injunction was the dissemination of the department's policy, and the order specifically stated that "the solution to the problem is *not* a reworking or expansion of the department's racial harassment policy." *Id.* at 1091 (emphasis added). Therefore, only harassing conduct prohibited by the policy is prohibited

by the April 13 order and injunction. This statement, however, does not resolve the question at issue in its entirety, for the next question is what conduct is prohibited or required by the Transportation Department's harassment policy. In the April 13 order and injunction, the court understood the policy to require employees to report violations of the racial harassment policy by co-employees. The policy states that "Any employee who believes he or she has been subjected to any racial slur or racially derogatory word or remark or statement, or who becomes aware of any such situation, should report the matter immediately so that a prompt investigation can be conducted and appropriate action taken for any violations of this directive." The court understood the word "should" to be *mandatory.* The Transportation Department maintains, however, that the word "should" simply reflects what is *expected,* and, in particular, with emphasis on the word "immediately," that the report, if made at all, "should" be made "immediately" so that there can be a prompt investigation. Because the Transportation Department's reading of its own policy is a reasonable one and because, as stated, it was not the intent of the court to add to the substance of the policy (in the sense of what is and is not harassing conduct), the language in the April 13 order and injunction making it mandatory that employees report violations by co-employees is withdrawn.

Of course, the April 13 order and injunction applied to the Transportation Department's harassment policy only to the extent that it prohibited conduct related to race. Neither the April 13 order and injunction nor this order applies to conduct related to sex, age, religion, or other non-racial matters.

### III.

However, the court cannot agree with the Transportation Department's contention that it received no 'due process notice' of the

court's concern about application of its racial harassment policy department-wide. First of all, as stated, at the beginning of the hearing on April 1, 1996, on the issue of whether the Transportation Department had improperly suspended plaintiff Johnny Reynolds in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17, the court orally ordered the Transportation Department to show cause as to why its racial harassment policy should not be modified. The court stated that it "hereby issues a show cause as to whether the Alabama Department of Transportation and its officials, including but not limited to [Transportation Department Director] Jimmy Butts ..., have adequately addressed racial harassment under the orders of this Court."[1] The court stated that it "consider[ed] that a part of these proceedings and consider[ed] the defendants obligated to address these concerns."[2] And, in response to a request from the department's counsel to list again the names of those officials whose conduct was at issue, the court emphasized that it "was just pointing out ... officials" but that "it's really the Alabama Department of Transportation."[3] And perhaps most importantly, after the court went on to note that the oral order was intended to "give[ ] ... *due process notice* that the issue has been raised, that as to the rest of the proceedings you may ask questions about it,"[4] the court concluded that it was considering "issuing a preliminary injunction requiring the Department to address more adequately the racial harassment."[5] The Transportation Department's contention that it did not know that its racial harassment policy was at issue is wholly meritless.

■ Second, even without the due process notice given by the court, the relief afforded by the court was still appropriate. In a memorandum opinion also entered on April

---

1. *See* oral order in open court, transcript of hearing on plaintiffs' motion for preliminary injunction, held April 1 through 5, 1996, at 83.

2. *Id.*

3. *Id.*

4. *Id.* at 85 (emphasis added).

5. *Id.* at 86. The court recognizes that it stated in the hearing that it was considering issuing a "preliminary," not permanent, injunction. If the defendants want, the court is willing, upon request, to recast this order as a preliminary injunction, and the court will reconsider the matter anew after the defendants have been given additional time to put on more evidence.

13, 1998 (Doc. no. 2569), the court found that "the Transportation Department suspended Reynolds because of his race and in retaliation for protected conduct, in violation of Title VII." *Reynolds,* 4 F.Supp.2d at 1090. The remedial relief imposed by the court was necessary to afford Reynolds full relief. The Transportation Department counters that the relief should have been limited to the Design Bureau where Reynolds worked. The department's effort to cabin the issue to a limited, isolated incident will not wash, however. The problem was at the very heart of the Transportation Department. As the court wrote,

> "Others in the Transportation Department, not Reynolds, are guilty of violations of the department's racial harassment policy. Director Butts, Chief Engineer Bass, Design Bureau Chief Arkle, Roadway Design Engineer Bush, Assistant Roadway Design Engineer Reese, Section Leader Wiggins, Squad Leader Lett, and Squad Leader Jordan, have all violated the department's racial harassment policy. Although aware of both isolated and widespread instances of the use of the word 'nigger,' they failed to take any corrective measure. Moreover, because they failed to take corrective measure, they set the stage for—that is, they created the environment that led to—the racial strife that spawned this litigation. If anyone deserves suspension, they do."

*Id.* The court then concluded that "until [the department's top officials] assume the responsibility placed on them by federal law and the orders of this court to enforce the Transportation Department's racial harassment policy aggressively and expansively, they will continue to have incidents similar to, if not worse than, that involving Reynolds, Scott, and Lett." *Id.* Relief, if Reynolds was to be able to work in an environment free of racial harassment, has to begin at the top.

Moreover, it must also be kept in mind that the Transportation Department's failure to enforce its racial harassment policy did not occur against a clean history. To the contrary, as the record in this case reflects, the department has a longstanding and deeply rooted "sorry history of race relations." *Adarand Constructors v. Pena,* 515 U.S. 200, 255, 115 S.Ct. 2097, 2126, 132 L.Ed.2d 158 (1995); *see also Reynolds,* 4 F.Supp.2d at 1071–77 (detailing this history of "race relations"). The evidence the court heard in April 1996 sadly reflected a continuation of that history, and, regrettably, it further reflected that prior outstanding orders had not adequately addressed this serious problem.

The Transportation Department suggests that the court take note of the absence of any racial harassment complaints since the Reynolds incident. Assuming that the department's suggestion can be supported with evidence, the suggestion does not carry the implication the department wants. In light of the racially-egregious way the department treated Reynolds and the conspicuous indifference it showed towards Scott's complaints about racially-derogatory language, it would be expected that no one else would come forward with complaints of racial harassment. The department sounds like the husband who, after beating up his wife for complaining to authorities about physical abuse, has the cruel audacity to brag that her silence since then means that he has stopped beating her. Not until the court is presented with the following credible evidence can it conclude that the department has an appropriate handle on racial harassment: first, the department engaged in an aggressive and broad effort to change the longstanding working environment, sadly perpetuated by the Reynolds incident, in which racial-harassment complaints are viewed with indifference, if not hostility, into a working environment that not only allows complaints of racial harassment, but actually "encourage[s] victims of harassment to come forward." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 73, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986); and, second, if and when the department received a complaint of racial harassment, it responded quickly, fairly, and in full and non-discriminatory compliance with its own written policy to redress such situations.

█ The Transportation Department also characterized the affidavits required by the April 13 order and injunction as being *in terrorem.* The court has three responses to this characterization. First, the court intended to send the message to all Transportation Department employees, from Director

Butts on down, that it is serious about the department's living up to its obligation of enforcing its racial-harassment policy. Second, it is most curious that the department has characterized the April 13 order and injunction as being *in terrorem*, when not once (until after being required to do so by the court) did it display any concern about the *in terrorem* environment that Scott had to suffer when his complaints of racially hostile language landed on deaf ears, and not once did it display any concern about the *in terrorem* environment that Reynolds had to suffer when he peacefully sought resolution of a concern he had that a white co-worker may have used the word "nigger" in his discussion about Reynolds. The fact that the department would complain that a remedial effort at *legal* redress is done *in terrorem*, and yet would not view as being *in terrorem* the circumstances in which the conduct at issue was *illegal*, speaks loudly about whom the department was, and still is, really out to protect: a full and fair investigation of the Reynolds incident could very well have led to the conclusion, as to the first instance, that the perpetrators were white, and, as to the second instance, that the principal victims— those about whom racial slurs were being used—were black. But third and finally, the relief ordered by the court did not initiate any contempt proceedings, although the evidence could clearly have justified such, and, as a result, the court did not fine anyone, or even threaten to imprison anyone. Instead, after taking limited remedial measures to remind the Transportation Department and its employees of the court's no-nonsense view of the department's obligation to enforce its racial-harassment policy, the court essentially took a conservative wait-and-see attitude and again placed its trust, hopefully now well-founded, in the Transportation Department to enforce its policy. If the court's April 13 order and injunction is subject to any

criticism, the criticism should be that the order and injunction is too restrained.

Reynolds is, therefore, clearly entitled to additional relief under Title VII.[6] In all respects, other than those mentioned above, the spirit of the April 13 order and injunction remains in tact. The Transportation Department will, however, be allowed 60 days from the date of this order to comply with the obligations set forth below, which shall replace the obligations placed on the Transportation Department and its officials by the April 13 order and injunction.

Accordingly, it is the ORDER, JUDGMENT, and DECREE of the court that defendants Alabama Department of Transportation and Jimmy Butts, and their officers, agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of this order, are each ENJOINED and RESTRAINED from failing to comply with the Alabama Department of Transportation's racial harassment policy, a copy of which is attached to this order.

It is further ORDERED that defendants Alabama Department of Transportation and Jimmy Butts shall, within 60 days, provide a copy of this order and the attached racial harassment policy to each and every supervisor in the Alabama Department of Transportation.

It is further ORDERED that defendants Alabama Department of Transportation and Jimmy Butts shall submit to the court, within 60 days, an individual affidavit from each and every supervisor in the Alabama Department of Transportation attesting to the following:

(1) The supervisor received a copy of this order and the attached racial harassment policy;

(2) The supervisor understands that he or she is obligated to do the following:

---

**6.** The Transportation Department has suggested that the April 13 order and injunction is overbroad and vague. If the department is concerned that the order is unclear about such things as the requirement that departmental supervisors take "appropriate disciplinary action," this concern is without foundation. The policy itself is not any more specific. More importantly, the court will not, and should not, second

guess the type of disciplinary action taken as long as it does not violate the consent decree, Title VII, or some other federal law. The court's concern is not about such subjective matters but rather that departmental officials failed to take any action at all under the policy—not even an investigation—when confronted with substantial evidence of probable violations.

(a) Comply with the racial harassment policy;

(b) Report in writing to the EEO Monitor (who is currently Ron Green), within seven days, any violation of the racial harassment policy by any employee (including, but not limited to, any use of racial slurs, such as "nigger," etc., or the telling of any racially-derogatory jokes, by any employee in the workplace); and

(c) Take appropriate disciplinary action against any employee who violates the racial harassment policy;

(3) The supervisor understands that the failure to comply with this order and the attached racial harassment policy will subject him or her to civil and criminal contempt sanctions (including fines and imprisonment) in the United States District Court;

(4) The supervisor understands that this order does not waive or deny any due-process rights that he or she has with regard to potential civil and criminal contempt proceedings and, more specifically, the supervisor does not waive any such rights by executing any affidavit or other document required for compliance with the order.

(5) The supervisor has furnished a copy of this order and the racial harassment policy to all persons whom he or she supervises and listed all their names in his or her affidavit;

(6) The supervisor has explained to all persons whom he or she supervises that they are obligated to comply with the racial harassment policy;

(7) The supervisor has explained to all persons whom he or she supervises that they will be subject to disciplinary action if they violate the attached racial harassment policy;

(8) The supervisor has explained to all persons whom he or she supervises that their failure to comply with the attached racial harassment policy will subject them to civil and criminal contempt sanctions (including fines and imprisonment) in the United States District Court; and

(9) The supervisor has explained to all persons whom he or she supervises that

this order does not waive or deny any due-process rights that the supervised employee has with regard to potential civil and criminal contempt proceedings and, more specifically, the employee does not waive any such rights by executing any affidavit or other document required for compliance with the order.

The clerk of the court is DIRECTED to issue a writ of injunction.

The clerk of the court is DIRECTED to provide for service of this order and injunction upon defendants Alabama Department of Transportation and Jimmy Butts by certified mail, returned receipt requested.

The clerk of the court is DIRECTED to provide for service of a copy of this order and injunction upon the United States Attorney for the Middle District of Alabama by certified mail, returned receipt requested.