Steve THOMASON, on behalf of himself and others similarly situated, Dewayne Leonard, on behalf of himself and others similarly situated, May Doris Robinson, on behalf of herself and others similarly situated, Johnny Daniels, on behalf of himself and others similarly situated, Calnar Joann Price, on behalf of herself and others similarly situated, et al., Plaintiffs–Appellees,

v.

RUSSELL CORPORATION, Defendant–Appellant.

No. 95–7074.

United States Court of Appeals, Eleventh Circuit.

Jan. 6, 1998.

Chris Mitchell, Carol Sue Nelson, Constangy, Brooks & Smith, Birmingham, AL, for Defendant–Appellant.

Collins Pettaway, Jr., Rose Mary Sanders, Chestnut, Sanders, Sanders & Pettaway, P.C., Selma, AL, for Plaintiffs–Appellees.

Before TJOFLAT and DUBINA, Circuit Judges, and STAGG *, Senior District Judge.

TJOFLAT, Circuit Judge:

Before us for review pursuant to 28 U.S.C. § 1292(a)(1) (1994) is a "preliminary injunction" extending the expiration date of a consent decree. Because the "preliminary injunction" is not an injunctive order, we lack

---

* Honorable Tom Stagg, Senior U.S. District Judge for the Western District of Louisiana, sitting by designation.

section 1292(a)(1) jurisdiction to review it. We therefore dismiss this appeal.

## I.

This case began almost twenty years ago. In 1979, a group of black employees and former employees of Russell Corporation, an Alabama-based manufacturer, brought suit against Russell in the United States District Court for the Middle District of Alabama. They claimed that certain of Russell's employment practices were racially discriminatory, and sought damages and injunctive relief under 42 U.S.C. §§ 2000e *et seq.* (1994) ("Title VII") and 42 U.S.C. § 1981 (1994). The court certified the suit as a class action.[1] Following discovery, the parties entered into a consent decree (the "Original Decree"), which the court approved on December 6, 1984.

In addition to prohibiting certain employment practices, the Original Decree tracks the language of Title VII and section 1981, prohibiting Russell from "discriminating against black applicants or employees in hiring, initial job assignments, transfers, promotions, discipline or discharge." It also provides a pool of $250,000 to be distributed among a class of present and former employees. That pool has been exhausted; consequently, the monetary provisions of the Original Decree are no longer extant. Finally, the decree requires Russell to engage in remedial measures addressed to the community at large: Russell is to establish scholarships—with a preference for black applicants—at local colleges; contribute to minority organizations; and buy a certain percentage of its goods and services from minority-owned businesses. The Original Decree does not have an expiration date.

On June 7, 1991, Steven Thomason, a Russell employee who was not a named plaintiff in the case, moved the district court "to enforce the consent decree." Although he did not allege that Russell had discriminated against him, Thomason claimed that Russell had violated and was continuing to violate the Original Decree. Thomason followed this motion with a motion to substitute himself for the named plaintiffs in the case.[2] On September 3, 1991, the court granted the motion to substitute. It then scheduled a hearing on Thomason's motion to enforce the Original Decree.

In preparation for the hearing, the parties engaged in discovery. They were able to narrow the scope of Thomason's motion to enforce to the question of whether Russell's use of the Bennett Mechanical Aptitude Test to select employees for mechanic positions unfairly discriminated against black applicants for those positions.

Russell and Thomason eventually entered into a "Supplemental Consent Decree," which the court approved on October 15, 1993. The Supplemental Decree incorporates the Original Decree (collectively the "Decree") and adds several new provisions, including a requirement that Russell fill all open mechanic positions with blacks who failed the Bennett test, and that Russell replace the Bennett test with either a non-discriminatory test or a "training and apprentice program" approved by the court or the parties. The Supplemental Decree also requires Russell to make a "good faith" attempt to hire a "minority consultant" to assist Russell in reaching its goals under the Original Decree for purchasing goods and services from minority-owned businesses. Unlike the Original Decree, the Supplemental Decree contains a provision entitled "Duration," which states:

> All terms of the Consent Decree and this Supplemental Consent Decree shall expire and be dissolved effective December 6, 1995, in the absence of a showing that defendant has failed or refused to comply with the Consent Decree or this Supplemental Consent Decree. If no such showing has been made by December 6, 1995, the Consent Decree and this Supplemental Consent Decree shall be dissolved and this civil action shall be dismissed with prejudice.

---

1. The court defined the class to include "all black persons who have been employed by Russell Corporation or who have applied for employment with Russell Corporation in its Tallapoosa County plants *since January 1, 1978.*"

2. Thomason filed his motion for substitution on behalf of himself and several other black employees. We refer to them collectively as "Thomason."

On October 26, 1995, Thomason filed a second "motion to enforce." He alleged that Russell had not developed an approved mechanic promotion program, and that it had not in good faith pursued a contract with a minority-owned consulting business.

The court, acting on its own initiative, treated Thomason's motion in part as a motion for preliminary injunction extending the dissolution date of the Decree. The court reasoned that unless it extended the dissolution date, the Decree would expire before the court could decide whether Russell had violated it. In order to provide sufficient time for its decision, therefore, the court on December 5, 1995 issued a "preliminary injunction" extending the Decree's dissolution date indefinitely.

█ Russell immediately moved the court to stay the December 5 order. The court denied the motion, and Russell took this appeal, contending that the district court lacked an evidentiary basis for the entry of the "preliminary injunction." [3]

## II.

█ The "preliminary injunction" before us is not an injunction. Instead, it amounts to nothing more than an observation by the district court that the Decree's expiration date does not preclude the court from passing on a motion, filed prior to the expiration date, alleging that Russell has violated the Decree's mandate. We agree with this observation. Neither the parties in agreeing to the Decree's provisions, nor the district court in approving them, could have intended that the court would be barred from passing on a motion to enforce the Decree simply because the court could not reach a decision until after the Decree's expiration date.

█ In sum, the order before us does not qualify as a preliminary injunction. We therefore lack jurisdiction to review it under 28 U.S.C. § 1292(a)(1), or under any other statute that would grant us authority to evaluate the order.[4]

DISMISSED.

█

---

3. Russell also contends that the Decree is unenforceable because recent Supreme Court decisions have established that certain of the Decree's provisions are unconstitutional. We remind Russell that the proper procedure for challenging the constitutionality of a judicial decree is through a motion to modify that decree. See Ensley Branch, NAACP v. Seibels, 31 F.3d 1548, 1563–64 (11th Cir.1994) (explaining modification process); Roberts v. St. Regis Paper Co., 653 F.2d 166, 172–74 (5th Cir. Unit B 1981) (establishing that district courts have the "inherent power to modify the prospective effect of [their] decrees in response to changed circumstances") (in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981). Russell has not moved the district court to modify the decree. We would therefore decline to hear Russell's constitutional arguments even if we had jurisdiction over the order now before us. See Roberts, 653 F.2d at 175 ("[W]hether equity requires modification of the decree ... must be determined in the first instance by the trial court upon a proper motion.").

4. It is apparent to us that the district court was led to enter the preliminary injunction through the failure of Thomason's counsel to comprehend the appropriate means of ensuring compliance with an injunction such as the Decree in this case. Instead of moving the court to "enforce" the Decree, counsel should have moved the court to issue an order to show cause why Russell should not be held in contempt and sanctioned for failing to abide by the Decree's mandate. See Wyatt v. Rogers, 92 F.3d 1074, 1078 n. 8 (11th Cir.1996) ("Precedent dictates that a plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance."); Newman v. Alabama, 683 F.2d 1312, 1318 (11th Cir.1982). In short, the proper method of enforcing a consent decree is not a "motion to enforce" or similar plea for the court to "do something" about a violation of the decree. See Wyatt, 92 F.3d at 1078. Had Thomason moved the court for an order to show cause, citing the precise provision of the Decree that Russell had allegedly disobeyed, we are confident that the district court would have promptly issued an order to show cause, and—after receiving Rus-

sell's response—scheduled a contempt hearing. If the proper course had been followed, this case would not be before us.