[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 23, 2001
THOMAS K. KAHN
CLERK

_____

No. 98-6102
_____

D.C. Docket No. 85-00665-CV-T-N

JOHNNY REYNOLDS, individually
and on behalf of himself and as
a representative of a class of black employees
of the Highway Department, State of Alabama,
similarly situated,

Plaintiff-

Appellee,

WILLIAM ADAMS, CHERYL CAINE,
TIM COLQUITT, WILLIAM FLOWERS, et al.,

Intervenors-Plaintiffs-

Appellants,
         versus

JIM BUTTS, in his official capacity
as Director of the Alabama Department
of Transportation, HALYCON VANCE
BALLARD, individually and as Director
of Personnel Department, State of Alabama; et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Middle District of Alabama

_____

**(May 23, 2001)**

Before TJOFLAT and HULL, Circuit Judges, and PROPST*, District Judge.

TJOFLAT, Circuit Judge:

This is the latest in a series of appeals arising out of a dispute involving the Alabama Department of Transportation (the "Department"), classes of black merit system employees and prospective merit system employees (the plaintiffs), and a class of white employees (the "Adams Intervenors"). See Reynolds v. Roberts, 202 F.3d 1303 (11th Cir. 2000) ("Reynolds I"); Reynolds v. Roberts, 207 F.3d 1288 (11th Cir. 2000) ("Reynolds II"). The question presented in this appeal is whether the district court may, sua sponte, enter an injunction that affects the legal rights of the parties without either (1) entertaining evidence and ruling upon the objections of the affected parties or (2) obtaining the consent of the affected parties. We hold that such sua sponte entry of an injunction is improper. We therefore reverse.

## I.

The lengthy procedural history of this litigation is set forth in our opinions in Reynolds I, 202 F.3d at 1305-11, and Reynolds II, 207 F.3d at 1292-98. Here, we

* Honorable Robert B. Propst, U.S. District Judge for the Northern District of Alabama, sitting by designation.

recite an abbreviated version of that history and then focus on the factual and procedural history relevant to the instant appeal.

A.

The named plaintiffs brought this suit against the Department[1] in May 1985, on behalf of all black employees and former employees of the Department and all unsuccessful black applicants for positions within the Department. Alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Equal Protection Clause of the Fourteenth Amendment, the plaintiffs sought monetary and injunctive relief under those statutes and under 42 U.S.C. § 1983. In October 1986, the court certified three plaintiff classes.[2]

---

[1] In addition to the Department, the plaintiffs sued various state officials. We refer throughout to all of the defendants simply as "the Department." See Reynolds I, 202 F.3d at 1306 n.1.

[2] The first class consisted of any black person who unsuccessfully applied for a merit position in the Department at any time after May 21, 1979. The second class included all blacks employed by the Department at any time after May 21, 1979, who were permanent employees under the Department's merit system and therefore eligible for, but had been denied, promotion. The third class consisted of a portion of the blacks employed by the Department at any time after May 21, 1979, as temporary employees. During their employment in the Department, these employees had applied for, but had been denied, merit positions. The district court subsequently combined these latter two classes of black employees, meaning that there are now two plaintiff classes: (1) all black merit system employees employed at any time since May 21, 1979; and (2) all blacks – whether currently employees of the Department or not – who unsuccessfully applied for merit system employment at any time since May 21, 1979. The first class is represented by plaintiffs Johnny Reynolds, Ouida Maxwell, and Martha Ann Boleware; the second class is represented by plaintiffs Peggy Vonsherrie Allen and Jeffrey Brown.

4

After the parties joined issue and engaged in discovery, they entered into settlement negotiations. In 1988, and again in 1991, they presented a proposed consent decree to the district court for approval. On each occasion, some members of the plaintiff classes objected to the entry of the decree; the district court sustained their objections and refused to enter the decree.

In June 1992, the case proceeded to trial before the court. Near the end of the plaintiffs' case, the parties asked the court to recess the proceeding indefinitely so that they could engage in further settlement negotiations. The court granted their request. In November 1993, they reached a partial settlement in the form of a proposed consent decree. The proposed decree provided a range of prospective class-wide injunctive relief. Among other things, it set hiring and promotion quotas for blacks – 33% of the positions in each job classification in the Department would be set aside for blacks. To ensure an adequate pool for this set-aside program, the decree directed the Department to mount an aggressive recruiting campaign at historically black colleges and universities. Finally, the decree required the Department to establish a grievance procedure for its employees.

The parties presented the proposed decree to the district court. The court, in turn, scheduled a hearing for January 19, 1994 to entertain objections from

5

members of the plaintiff classes or others likely to be affected (like white employees of the Department) by the terms of the proposed decree. On January 13, a group of white Department employees (the Adams Intervenors) moved the court for leave to intervene on behalf of the Department's non-black employees to challenge the race-conscious provisions of the proposed decree – specifically, the 33% quota requirement for all job classifications in the Department. The court granted the motion, Reynolds v. Roberts, 846 F. Supp. 948, 953-54 (M.D. Ala. 1994), and subsequently certified an additional class, consisting of the Department's non-black employees.[3] Importantly, the court did not permit the Adams Intervenors to present additional factual evidence in support of their objections. Id. at 954. Instead, the court allowed the Adams Intervenors to argue, based only on evidence already received in the plaintiffs' case, "that the factual predicate is not sufficient as a matter of law to warrant the type or extent of race-conscious relief contained in the proposed decree." Id.

The January 19 hearing was held as scheduled. Over 200 people attended the hearing, including many non-black employees of the Department. The objections to the race-conscious aspects of the proposed consent decree were such

---

[3] This class is represented by William Adams, Cheryl Caine, Tim Colquitt, William Flowers, Wilson Folmar, George Kyser, Becky Pollard, Ronnie Pouncey, Terry Robinson, and Tim Williams.

6

that the parties withdrew it and, with leave of court, went back to the drawing board. By late February 1994, the parties agreed to divide the previously proposed decree into three parts, which they called (and still call) Consent Decrees I, II, and III. Consent Decree I contained the provisions that all sides agreed provided only race-neutral prospective relief. Consent Decrees II and III contained provisions that were acceptable to the plaintiffs and the Department, but were opposed as race-conscious by the Adams Intervenors.[4]

## B.

The parties submitted Consent Decree I to the district court for approval, and, on March 7, the court held a hearing on the fairness of the proposal. No one other than the parties' attorneys appeared at the hearing, and no one objected to the entry of the decree. The court approved the decree and, by order entered March 16, 1994, adopted Consent Decree I in full.[5] The court noted at that time that it

---

[4] As discussed infra note 11 and accompanying text, the Department has subsequently disclaimed agreement to Consent Decrees II and III due to what it views as changes in the relevant law since the original consent decree was negotiated in 1993.

The Adams Intervenors have always objected to the entirety of Consent Decrees II and III.

[5] Consent Decree I is composed of a series of "Articles" that revamped the process by which the Department hires, promotes, classifies, and pays its employees. The decree abolished the system of "employment registers" from which positions were filled and promotions were granted, and created new qualifications and procedures for hiring and promotion. It also created new procedures for, among other things, rotation of job duties, recruitment, and training. None

would "consider final approval of Consent Decrees II and III separately at a later time." The court explicitly held that "[p]laintiffs' and intervenors' motions with respect to Consent Decree II [are] denied without prejudice."[6]

On April 16, 1997, three years after the entry of Consent Decree I, the court entered a money judgment for $34,732,487 (back-pay plus interest) in favor of one of the plaintiff classes. The court's rationale was that Consent Decree I operated as an admission of classwide liability by the Department – that the Department had discriminated against the plaintiff classes, and the individual members thereof, with respect to its hiring and promotion decisions. See Reynolds v. Ala. Dep't of Transp., 996 F.Supp. 1156 (M.D. Ala. 1998) (memorandum opinion explaining the basis for the entry of judgment on April 16, 1997). The Department and the Adams Intervenors appealed, and on February 2, 2000 we vacated both the district court's judgment on money damages and its determination that Consent Decree I established classwide liability. Reynolds I, 202 F.3d at 1311.

---

of the Articles of Consent Decree I provides special benefits or procedures for black employees of the Department.

[6] The motions to which the court referred were a motion by the plaintiffs to approve Consent Decree II and a motion by the intervenors for proposed revisions to the provisions of Consent Decree II. The intervenors also objected to the entry of Consent Decree II without their proposed revisions.

On September 15, 1997,[7] the parties resumed trial on the remaining issues.[8] In the midst of this trial, the district court twice queried the Adams Intervenors about their objections to paragraph four of proposed Article Thirteen (which had been a part of Consent Decree II).[9] Then, on January 23, 1998, without a motion before it and without further argument or briefing from the parties, the court entered an order and injunction adopting the paragraph. Reynolds v. Ala. Dep't of Transp., 996 F.Supp. 1118 (M.D. Ala. 1998). No other portions of Consent

---

[7] The timing is important because the district court entered the paragraph at issue in this appeal after deciding that Consent Decree I established liability but before we issued our opinion in Reynolds I (although the parties had taken their appeal in Reynolds I prior to the entry of the challenged paragraph, see Reynolds I, 202 F.3d at 1307 n.3). The liability of the Department therefore necessarily formed the basis for the court's decision-making process regarding the entry of the challenged paragraph. Because Reynolds I held that Consent Decree I did not establish classwide liability, the district court, on remand in the instant case, should not make a determination about the appropriateness of the challenged paragraph against a background of classwide liability deriving from Consent Decree I.

[8] The initial trial in 1992 was limited (by pre-trial order) to issues of classwide liability. Consent Decree I provides, in Article Twenty, for further proceedings to resolve the monetary and non-monetary remedies for individual class members, including the named plaintiffs and intervenors. Consent Decree I did not "in and of itself entitle[] any such class member to such remedies."

[9] The court first asked the intervenors to address the legality of paragraph four of Article Thirteen on October 2, 1997. The court asked the intervenors to restate their objections on January 14, 1998. That same day, the court asked for a clarification of the Department's position. The Department stated unequivocally that it objected to the challenged paragraph. Two days later, on January 16, the court asked the plaintiffs how many black employees would be affected by entry of the challenged paragraph. One week later, the court entered an order and injunction adopting the challenged paragraph.

Decrees II and III have been entered. Thus, it is this sole paragraph from Consent

Decree II that is at issue in this appeal.[10]

The challenged paragraph reads:

Offers of reclassification of incumbent employees to GCE [Graduate Civil Engineer]:

Black persons (a) who are employed as of the effective date of the Settlement Decree with the Highway Department in jobs other than PCE [Professional Civil Engineer], GRE [Graduate Registered Engineer], or GCE, and (b) have a degree in Civil Engineering or Civil Engineering Technology will, within 90 days following the effective date of the Settlement Decree, be offered reclassification to the GCE job.

## II.

A district court's decision to approve, modify, or not modify a consent

decree is reviewed for abuse of discretion. Stovall v. City of Cocoa, 117 F.3d

1238, 1240 (11th Cir. 1997). As explained below, however, this appeal does not

involve a consent decree as such but rather an injunction issued sua sponte by the

district court. The district court's action was in the form of a decision made as a

matter of law, on the court's own motion. We therefore apply de novo review.

---

[10] For the sake of completeness, we note that the district court's permanent injunction preventing the use of the grievance procedure by white employees of the Department was entered on March 3, 1998. This injunction was appealed by the Department and the Adams Intervenors on March 9-10, 1998, and was vacated by our opinion in Reynolds II, 207 F.3d at 1302.

III.

A.

As described supra Part I.B, the district court approved and entered Consent Decree I on March 16, 1994. Such entry was proper because all parties agreed to Consent Decree I. The parties disagreed as to Consent Decrees II and III, however, because they contained provisions that at least some of the parties believed to be race-conscious. The court did not, therefore, enter Consent Decrees II and III.

The plaintiffs contend that Consent Decrees II and III remain pending before the district court for entry. We disagree, particularly since the Department has withdrawn its consent after informing the district court that it believes that Consent Decrees II and III are unconstitutional in light of Ensley Branch, N.A.A.C.P. v. Seibels, 31 F.3d 1548 (11th Cir. 1994), and In re Birmingham Reverse Discrimination Employment Litig., 20 F.3d 1525 (11th Cir. 1994).[11] The plaintiffs

_____

[11] Ensley Branch and In re Birmingham, which both address the legality under Title VII and the Equal Protection Clause of certain race-conscious provisions of consent decrees entered into by government employers, were decided after the plaintiffs and defendants had negotiated the original consent decree and presented it to the district court for approval. In November 1995, the district court ordered the plaintiffs, defendants, and intervenors to address the legality of Consent Decrees II and III in light of Ensley Branch and In re Birmingham.

The Department concluded that these cases "substantially clarified the application of previous Supreme Court precedent" to race-conscious provision in consent decrees. The Department also noted that these cases evinced a more skeptical approach to race-conscious settlements than had prior Eleventh Circuit decisions. The Department thus concluded that the race-conscious provisions of Consent Decrees II and III violated both the Equal Protection Clause and Title VII. Therefore, the Department objected to the entry of Consent Decrees II and III and asked the district court to modify Consent Decrees II and III to eliminate race-conscious

11

alone currently support the entry of Consent Decrees II and III. In this sense, these "consent decrees" do not constitute consent decrees at all – notwithstanding what the district court or parties may call them.[12] See White v. Alabama, 74 F.3d 1058, 1073 (11th Cir. 1996). The most apt description of Consent Decrees II and III at present – particularly in light of the Department's concern about their legality – is that they are the plaintiffs' proposed decrees. The district court was apparently aware of the difficulty inherent in calling this challenged paragraph a "consent decree" – albeit a paragraph lifted from what the parties call "Consent Decree II" –

---

provisions because the obligations placed on the Department under those agreements had "become impermissible under federal law." Moreover, as described supra note 9, the court knew that the Department specifically objected to the entry of the challenged paragraph. See also Reynolds v. Ala. Dep't of Transp., 996 F.Supp. 1118, 1120 (M.D. Ala. 1998) ("The defendants . . . object to ¶ 4.").

    The positions of the Adams Intervenors and the plaintiffs on Consent Decrees II and III were unchanged by Ensley Branch and In re Birmingham. The Adams Intervenors believed the cases bolstered their claims that the proposed decrees violated both Title VII and the Equal Protection Clause, while the plaintiffs contended that Consent Decrees II and III satisfied the constitutional and statutory standards regarding race-conscious relief set forth in those cases.

    [12] Even if the challenged paragraph could somehow be construed as having the "consent" of the plaintiffs and the defendants, it clearly does not have the consent of the intervenors. This is important because the intervenors have legal rights at stake in this litigation, namely rights under the Equal Protection Clause, Title VII, and state merit-system law to compete for state jobs on a race-neutral basis. The clear law of this circuit is that "a consent decree requires the consent of all parties whose legal rights would be adversely affected by the decree." United States v. City of Hialeah, 140 F.3d 968, 975 (11th Cir. 1998); see also White v. Alabama, 74 F.3d 1058, 1073 (11th Cir. 1996) ("In this circuit, a decree that provides a remedy agreed to by some, but not all, of the parties cannot affect the rights of a dissenting party."); id. at 1076 (Black, J., specially concurring) ("Once a party invervenes, he becomes a full participant and is entitled to have his claims litigated."). The consent of the intervenors is thus needed for the challenged paragraph to be entered as a "consent decree."

when it fashioned its order in the form of an injunction.[13]  Reynolds v. Ala. Dep't

of Transp., 996 F.Supp. 1118, 1129 (M.D. Ala. 1998).

Lacking the consent of all of the parties, the court obviously lacked the

power to enter a decree purportedly based on consent, for "it is the parties'

agreement that serves as the source of the court's authority to enter any judgment

at all." Local No. 93 v. City of Cleveland, 478 U.S. 501, 522, 106 S. Ct. 3063,

3075, 92 L. Ed. 2d 405 (1986).   A district court may not "require the parties to

accept a settlement to which they have not agreed." Evans v. Jeff D., 475 U.S.

717, 726, 106 S. Ct. 1531, 1537, 89 L. Ed. 2d 747 (1986).  Pulling one isolated

paragraph out of a proposed consent decree runs counter even to what these parties

originally agreed upon back in 1993, for a "settlement must stand or fall as a

---

[13] The court entered the injunction ordering enforcement of the challenged paragraph in what appears to be the form of a permanent injunctive order.  It did so, however, on the basis of only "the plaintiffs case." Reynolds v. Ala. Dep't of Transp., 996 F.Supp. 1118, 1125 n.19 (M.D. Ala. 1998).  The court stated that its findings were "only preliminary" and that all the "comments throughout [the] order about the evidence should be taken as such." Id.  On the one hand, if the court meant the injunction to be a preliminary injunction, the court erred by failing to utilize the four-part standard for preliminary injunctions.  See Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 238 F.3d 1300, 1308 n.18 (11th Cir.), cert. denied, ___ S. Ct. ___, 69 U.S.L.W. 3619 (2001) (noting that preliminary injunctive relief may only be granted if the moving party shows (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) that threatened injury to the movant outweighs any injury to the opposing party; and (4) an injunction is not adverse to the public interest).  On the other hand, if the court meant this to be a permanent injunction, then the court erred by admittedly basing its conclusion on the evidence of only one party.  In the text, we treat the court's order as a permanent injunction based on preliminary evidence and, as in Reynolds II, we are forced to conclude that "that dog won't hunt." Reynolds II, 207 F.3d at 1300.

13

whole." Brooks v. Ga. State Bd. of Elections, 59 F.3d 1114, 1120 (11th Cir. 1995)

(quoting Cotton v. Hinton, 559 F.2d 1326, 1331-32 (5th Cir. 1977)).


B.

Dispensing with the notion that Consent Decrees II and III were still pending

as such with the district court when the challenged paragraph was entered, we now

turn to whether the plaintiffs even moved the court for an injunction which

included the challenged paragraph. The record shows no such motion before the

court. On February 13, 1997, the plaintiffs moved the court to hold the

Department and its director in contempt. At the same time, the plaintiffs asked the

court for sanctions and for entry of Consent Decrees II and III. Nowhere in the

court's January 23, 1998 order did the court indicate that the challenged paragraph

was being entered as a contempt sanction or in response to a separate motion by

the plaintiffs. In fact, the plaintiffs' contempt motion from February 1997 was still

pending when the briefs were filed in the instant case.[14] The only Article Thirteen

issues even before the court in January 1998, when the injunction was entered,

_____

[14] Had the challenged injunction been entered in response to the motion to hold the
Department in contempt, the district court would have issued a show cause order requiring the
defendants to show cause why they should not be held in contempt for non-compliance. See
Thomason v. Russell Corp., 132 F.3d 632, 634 n.4 (11th Cir. 1998). This did not occur.

14

related to a September 5, 1997 recommendation from a magistrate judge. This recommendation did not address paragraph four of Article Thirteen.

The only remaining alternative is that the plaintiffs' and defendants' joint motion for entry of the consent decree (in its entirety, before it was broken into three parts) from November 1993 was still pending before the court. But, as we have said, the Department withdrew its consent from Consent Decrees II and III because of alleged changes in the intervening law. Thus, any joint motion by the plaintiffs and defendants from November 1993 could no longer be valid. The district court acknowledged that the Department no longer consented to the entry of this paragraph by noting at the beginning of its order that "[t]he defendants and the Adams intervenors . . . object to [the entry of] ¶ 4." Reynolds, 996 F.Supp. at 1120. Because the plaintiffs did not move the court for entry of this challenged paragraph, we must conclude that the court acted sua sponte in entering the challenged paragraph in its order and injunction.

Given that the challenged paragraph was entered on the court's own initiative, we find it procedurally improper. We have previously frowned upon a district court's sua sponte transformation of a motion to enforce a consent decree into a motion for a preliminary injunction, see Thomason v. Russell Corp., 132 F.3d 632 (11th Cir. 1998), and a district court's sua sponte transformation of an

15

application for injunctive relief to enforce a consent decree into an application for a declaratory judgment, see Reynolds II, 207 F.3d at 1300-01. We see no difference in this situation; in fact, the instant situation may be more egregious. In any event, we reiterate what we stated in Thomason and Reynolds II – there are proper procedures to be followed for the enforcement and litigation of issues relating to consent decrees. Because we have outlined those procedures in other places, we need not reiterate them here. See, e.g., Reynolds II, 207 F.3d at 1298; Wyatt v. Rogers, 92 F.3d 1074, 1078 n.8 (11th Cir. 1996); Newman v. Alabama, 683 F.2d 1312, 1317-19 (11th Cir. 1982).

REVERSED and REMANDED.