HOUSTON, Justice.
The Alabama Department of Transportation (“ALDOT”) appeals the Montgom *61 ery Circuit Court’s issuance of a writ of mandamus ordering the appointment of a hearing officer to hear a formal grievance filed against ALDOT by Phillip Earl Price, an ALDOT employee. ALDOT contends that the claim raised in Price’s grievance has already been adjudicated through a settlement reached in federal court. We agree, and we reverse and remand.

I. Facts

The background for this case is Reynolds v. Roberts, No. 85-00665-CV-T-N, a class-action race-discrimination case that has been pending in the United States District Court for the Middle District of Alabama since 1985.[1] The plaintiffs in Reynolds, who are black, allege that the defendants in that case, including ALDOT, discriminated against them in their employment. Reynolds v. Roberts, 202 F.3d 1303, 1306 (11th Cir.2000)(“Reynolds I”). The district court had certified three plaintiff classes of African-Americans. 202 F.3d at 1306. In November 1993, the parties reached a partial settlement of the case and presented a proposed consent decree to the court. 202 F.3d at 1307.
The proposed consent decree provided for broad classwide relief, but left for subsequent trial monetary and nonmonetary claims of individual class members. Reynolds I, 202 F.3d at 1307. It required sweeping changes in ALDOT’s hiring and promotion policies, including changing the procedures for the appointment of employees in various job classifications and an ambitious set of race-conscious hiring and promotional quotas. Id.
In January 1994, before the scheduled fairness hearing, a group of nonblack AL-DOT employees (the “Adams intervenors”) moved to intervene on behalf of themselves and all ALDOT employees who were not part of the plaintiff classes. Reynolds I, 202 F.3d at 1307. The Adams intervenors filed objections to certain race-conscious provisions of the consent decree, such as the quota requirement for all AL-DOT job classifications, claiming that those provisions would adversely affect their interests and would discriminate against them on the basis of race. The district court granted the motion to intervene in February 1994, see Reynolds v. Roberts, 846 F.Supp. 948, 954 (M.D.Ala.1994), and subsequently certified the Adams intervenors as a class. Reynolds I, 202 F.3d at 1307. See also Reynolds v. Roberts, 207 F.3d 1288, 1293 (11th Cir. 2000) (“Reynolds II ”). Phillip Earl Price is a member of the Adams intervenor class.
Because of objections to the proposed consent decree, the parties divided the proposed consent decree into three decrees — Consent Decree I, Consent Decree II, and Consent Decree III. Reynolds II, 207 F.3d at 1293. “Consent Decree I contained the provisions that all sides agreed provided only race-neutral prospective relief. Consent Decrees II and III contained provisions that were acceptable to the plaintiffs and [ALDOT], but opposed as race-conscious by the Adams [i]nterve-nors.” 207 F.3d at 1293. In March 1994, following a fairness hearing, the district court approved and adopted Consent Decree I. Id.
Among other things, Consent Decree I required ALDOT to develop a grievance procedure for its employees. Reynolds II, 207 F.3d at 1294. ALDOT developed the grievance procedure required by Consent Decree I, and the federal district court approved the procedure on August 9, 1995. *62 Jd Price’s grievance was filed pursuant to this grievance procedure.
The grievance procedure was developed to address, among other things, claims by-individual employees that the majority of their working time was spent performing the duties and responsibilities of a higher job classification and that they were thus entitled to reclassification and a salary increase pursuant to Consent Decree I. Reynolds II, 207 F.3d at 1294.
On December 13, 1996, Price filed a grievance alleging that he was performing out-of-classification duties and seeking back pay and/or a provisional appointment to the higher classification, the work of which he says he was performing. By that time, more than 100 such grievances had been filed by black and white ALDOT employees.
In late 1996, ALDOT attempted to resolve grievances filed by three other white employees. Reynolds II, 207 F.3d at 1295. On February 27, 1997, however, the federal district court issued a temporary restraining order, at the request of the black plaintiff classes, enjoining ALDOT from implementing the grievance resolutions for the three white employees. 207 F.3d at 1296. On March 28, 1997, the black plaintiff classes sought an additional preliminary injunction (which the district court treated as a request for a permanent injunction) to prohibit ALDOT from processing any grievances by nonblack employees. Id. at 1296-97.
On March 3, 1998, the federal district court denied the permanent injunction, but instead issued a judgment declaring that ALDOT’s implementation of the grievance resolutions for use by the three white grievants would violate Consent Decree I. Reynolds II, 207 F.3d at 1297. The non-black Adams intervenor class, of which Price is a member, appealed the March 3 order to the United States Court of Appeals for the Eleventh Circuit. Id. Two years later, on March 29, 2000, the Eleventh Circuit vacated the district court’s March 3,1998, order, ruling that the grievance procedure was race-neutral and that it could be used by nonblack employees. Reynolds II, 207 F.3d at 1298,1301.
In April 2001,' the parties presented to the federal district court a settlement agreement for the Adams intervenor class. The settlement agreement recited that the defendants (including ALDOT) were paying $1.45 million “in settlement of ... [a]ll of the individual grievances seeking back-pay or promotions, as listed in [Exhibit] A hereto.” It further provided that “all grievances seeking backpay or promotions, as listed on Exhibit A, shall be dismissed.” Exhibit A to the settlement agreement is a list of the 290 pending grievances filed by members of the Adams intervenor class. Price’s grievance is included on this list of grievances that have been dismissed.
After a fairness hearing and the revision of the settlement agreement, the federal district court issued an order finally approving the settlement agreement on September 26, 2001. The settlement agreement and the order did not permit members of the Adams intervenors to opt out of the settlement.
Price filed a motion in the federal district court in March 2002 to set aside the settlement. That motion was denied without prejudice by agreement of the parties, and no appeal was taken either from the approval of the settlement or from the denial of Price’s motion to set aside the settlement.
Price filed the petition for the writ of mandamus in the present case in the Montgomery Circuit Court on January 15, 1998, before the settlement was reached with Price’s class. Price sought a writ of mandamus directing ALDOT to appoint a *63 hearing officer to hear Price’s December 1996 grievance. At the time Price filed the petition, ALDOT had been enjoined from implementing its three settlements with white grievants. The -plaintiff classes were then seeking to enjoin the use of the grievance process by any nonblack employee. Shortly after Price filed this petition, the federal district court issued its declaratory judgment prohibiting use of the grievance process by nonblack employees.
ALDOT removed this case to the federal district court. The district court remanded the case, however, on the grounds (a) that Price “seeks to invoke only state-law issues” and (b) that the United States Court of Appeals for the Eleventh Circuit had held in Reynolds II that the grievance procedure under Consent Decree I did not “implicate federal law concerns.” Thereafter, Price’s grievance was settled through the court-approved settlement agreement.
As a result of the settlement of the very claims on which Price’s grievance was based, ALDOT’s answer to the petition argued that Price’s petition was due to be dismissed on grounds of res judicata and mootness. A nonjury trial was conducted on May 20, 2002. On July 3, 2002, the Montgomery Circuit Court entered an order granting the petition and requiring ALDOT “to take any and all necessary steps to have Price’s grievance proceed to and through the final step of the grievance procedure.” Although recognizing that the “evidence before the Court as to the partial settlement in the Reynolds case is undisputed,” the order did not address the res judicata effect of the settlement. This appeal is from the July 3, 2002, order.

II. Standard of Review

A trial court should issue a writ of mandamus only upon a proper showing that there is “(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995). Price has no clear legal right to a hearing on his grievance if that hearing is barred by the doctrine of res judicata. Because a trial court’s ruling-on an issue involving res judicata is a pure question of law, we review that ruling de novo. Walker v. Blackwell, 800 So.2d 582, 587 (Ala.2001).

III. Analysis

The doctrine of res judicata will apply to bar a court from considering a claim when the following four elements are present: “(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions.” Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998). We find each element to be clearly met in this case.

A. A Prior Judgment on the Merits

We have recently held that a class-action settlement can serve as a prior judgment on the merits for res judicata purposes. Providian Nat’l Bank v. Pritchett, 846 So.2d 1072 (Ala.2002)(citing Martin v. Drummond Co., 663 So.2d 937, 947 (Ala.1995)). Accordingly, the federal district court’s September 26, 2001, order approving the settlement of 290 pending grievances—including Price’s— satisfies this element.
Price contends that. he did not receive notice of the settlement until after it was approved.[2] However, this is an *64 argument to be raised, if at all, before the federal district court that approved the settlement and, if necessary, before a federal appellate court.

B. A Judgment Rendered by a Court of Competent Jurisdiction

Although it is not completely clear from his brief, Price appears to argue that the federal district court “evidenced” its lack of jurisdiction to settle his grievance by remanding his petition for a writ'of mandamus to the state court.[3] However, this argument is clearly without merit. The federal district court certainly had jurisdiction to approve the class-action settlement, and its remand of Price’s petition, as stated above, demonstrates nothing other than the district court’s acknowledgment that the administration of the grievance procedure itself was a state issue.
C. Substantial Identity of the Parties The parties in both actions are identical.

D.Same Cause of Action

Price’s dismissed grievance is the same grievance he asserts as the basis for his petition for a writ of mandamus filed in the state court.

IV. Conclusion

Because each of the elements required for the application of the doctrine of res judicata are present, Price is barred from pursuing an additional hearing of his grievance. Consequently, Price had no clear legal right to the writ of mandamus, and the trial court erred in issuing the writ. We reverse the trial court’s judgment issuing the writ and remand the case for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.

. The specifics of the Reynolds case are thoroughly discussed in Reynolds v. Roberts, 251 F.3d 1350 (11th Cir.2001), Reynolds v. Roberts, 207 F.3d 1288 (11th Cir.2000), and Reynolds v. Roberts, 202 F.3d 1303 (11th Cir.2000).

. Even assuming Price's contention is true, however, it is doubtful that the lack of notice *64 affected Price’s ability to pursue his grievance, because the settlement agreement did not provide for opt-outs. Additionally, the fact that the settlement agreement did not allow Price to opt out of the settlement does not alter the res judicata effect of the settlement, because the right to opt out would have been necessary only with regard to class members who "do not have such contacts with the forum state as would support an exercise of in personam jurisdiction over a defendant.” Martin, 663 So.2d at 941 (construing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)); see also Adams v. Robertson, 676 So.2d 1265 (Ala.1995).

. In fact. Price strangely contends that because ALDOT did not appeal the federal district court's order remanding his case (something it could not have done, see 28 U.S.C. § 1447(d)), the remand order is itself a "prior judgment on the merits” and, through the doctrine of res judicata, bars ALDOT from arguing that the Montgomery Circuit Court cannot hear Price’s claims. That argument is completely without merit.